Leeds *v.* Bohemian Art Glass Works.

63   619
a65  402

HENRY W. LEEDS et al.

*v.*

BOHEMIAN ART GLASS WORKS.

[Filed June 14th, 1902.]

Upon the facts stated—*Held*, that the defendants were chargeable with maintaining a private continuing nuisance which complainant was entitled to have abated.

On bill, answer and proofs.

The complainants are the owners and occupiers of Haddon Hall, a large seaside hotel, located at the corner of North Carolina avenue and the boardwalk, at Atlantic City, New Jersey. This bill is filed for the abatement of alleged nuisances created by repellant and excessive noises in, and the throwing off of smoke and soot from, the recently-erected glass-house of the defendant company, upon property which almost immediately adjoins Haddon Hall.

The proven and admitted facts show that the complainants have for a number of years used their property as a hotel and boarding-house. It has two hundred and fifty lodging-rooms, is several stories high, and will accommodate over four hundred guests. It is a place of health and pleasure resort, for rest, rec-

reation and recuperation, by people from all parts of the United States. The house is located on the easterly side of North Carolina avenue, at its junction with the boardwalk, which it faces. This locality is almost wholly devoted to boarding-house purposes, and, on and along the boardwalk, to small shops for the sale of wares to passers on that thoroughfare. The evidence shows that there are no manufactories of any kind anywhere in the neighborhood.

The defendant company recently erected a glass-house, on leased premises, adjoining the complainants' property, being separated therefrom by a twenty-foot alley, the open space between the complainants' lodging-rooms and the defendant's glass-house structure being somewhat increased by the width of the complainants' lawn.

The defendant's glass-making furnace finds its vent in a smokestack. There is also a boiler-house and smokestack, with boiler and engine, and an oil tank, containing several thousand gallons of petroleum fuel oil, which is used in the manufacture of the glass. There is an exhaust steam pipe emptying from the rear of the boiler-house in the direction of the complainants' building. This escape of steam attends upon the running of the engine. An almost constant blast is required on the furnace, in order to keep the glass in a molten condition, so that the engine must run almost all the time. This exhaust makes a loud puffing noise, just opposite the sleeping-rooms of the complainants' hotel. On remonstrances made, a muffler was put over the exhaust escape. This had but little effect to reduce the noise.

The fuel used in melting the glass is crude petroleum oil, of which six thousand gallons are stored in a tank near the furnace. This oil is forced into the furnace under pressure, which causes a hissing noise. The combustion of this oil is imperfect, resulting in the escape of offensive smoke, which, during the blowing of the wind from the ocean, is carried into the higher windows and porches which are on that side of the complainants' hotel next the glass-house, and is very annoying to the guests.

The defendant company's process of manufacture requires the use of metal tubes. These are dipped into the molten glass,

the workman blows through the tube and fashions the glass as it hardens. A residue of hardened glass is broken off the tube by striking it against iron or other hard surface, thus making a metallic clanging noise.

These noises and odors have occasioned the guests who occupied the more desirable rooms on the oceanward front and sides of the complainants' hotel building to make great complaints, and to declare they will not accept those rooms if the annoyance continues.

The defendant company admits, in substance, the character of the neighborhood, the location and use which the complainants make of their property, the construction of the glass-works, and its furnaces, engines and boilers, on its own property, and its location and relation to the complainants' hotel. It denies that the noises made in the use of its property are in any way distinguishable from other noises produced in that locality by various itinerant musicians, and persons shouting recommendations of shows, brass bands, and the like. It admits that it has built, and has in use, the furnaces mentioned, but claims that they have been especially constructed for the purpose of effecting perfect combustion, entirely free from smoke, and insists that, in this respect, it has been eminently successful. It admits that it has its engine and exhaust, referred to in the bill, but insists that, at the time of filing its answer, the exhaust steam has, at the suggestion of the health inspector, been changed, so that it now noiselessly passes through a steam pipe above the roof of the building, muffling the sound. It admits the use of oil in its furnace, through gangs of burners, used alternately, and that this process produces a hissing noise, but it insists that the combustion of the atomized oil is perfect, and that no smoke arises therefrom; that the only chance of smoke arises when the attendant reverses the furnace in the adjustment of the burners, but it insists that such possibility of imperfect combustion only happens once in thirty minutes, and that, if any smoke is then produced, it is carried off through a stack which is about twenty feet higher than the tops of the windows of the top floor of Haddon Hall.

The answer substantially denies the existence of any of the noises, odors or offensive smoke complained of in the complainants' bill of complaint.

The cause came to hearing on the issues joined between the parties.

*Mr. Clarence L. Cole,* for the complainants.

*Mr. Walter H. Bacon* and *Mr. David J. Pancoast,* for the defendant.

GREY, V. C.

This case turns almost wholly upon the question of fact involved in the denials of the defendant company, by which it insists that it has not so conducted its business as to create the annoying noises and offensive odors described in the bill, and that the complainants' hotel rooms facing the defendant company's glass-house have not, because of those odors and noises, become substantially untenantable.

A number of guests who were staying at Haddon Hall during the whole period of the defendant company's operations came upon the stand as witnesses. Their testimony is substantially unanimous as to the frequency and offensiveness of all the annoying noises and odors of which complaint is made. Other persons who were familiar with the premises, both before and at the time of the defendant company's operations, confirm and support these statements of those disinterested persons who occupied rooms in the complainants' hotel, which faced the defendant company's works.

Several theories were advanced, and, to some extent, supported by testimony, to show that the defendant's plant, as used, could not have produced such noises and odors as are the subject-matter of complaint. But theories and conjectures go but a small way to refute facts of actual happening, proven by those who suffered from the incidents narrated.

Attempts were also made to show that the noises complained of might have emanated from other sources than the defendant's glass-house, but the testimony clearly proves that the noises

created by the operation of the defendant company's glass-works were distinctly different from any other in that neighborhood, and also distinctly and aggressively offensive to the comfort of persons who might, either for recreation, rest or recovery of health, occupy rooms in a hotel, located, as the complainants' is, with relation to defendant's glass-works.

Some objections were taken to the admission of certain parts of the testimony. The proofs submitted, irrespective of the evidence objected to, were, in my view, amply sufficient to establish, as a fact, that, from the time of the beginning of the operation of the defendant company's glass-works, in July, 1899, until it ceased operations, about the middle of August, 1899, such loud and frequently-repeated noises proceeded from the puffing of exhaust steam, and from the roaring of the blower or forced draft of the oil furnace, and from the use of metal implements of manufacture, and such offensive and permeating odors and smoke were caused by the imperfect combustion of oil, all on the defendant company's property, that the rooms and porches on that side of the complainants' hotel which faced the defendant's glass-house were thereby made so uncomfortable as to be substantially untenantable by guests of the hotel.

This clearly constitutes a private nuisance, which operates as a continuous injury to the complainants in the lawful enjoyment of their hotel property, which they are entitled to have abated.

The proofs show that the defendant company has become a bankrupt, and that its property has been sold from it, and that the buildings have been demolished and taken away.

In view of the strenuous litigation which has been made, both before and since the failure of the defendant company, and the demolition of its building, insisting upon its right to operate its works in the manner described in the complainants' bill, it seems to me that the complainants are entitled, as against the defendant company, and those representing it, to have protection against the injuries clearly shown, and which the defendant insists the complainants must bear.

A decree will be advised according to the views above expressed.